APRIL 27, 1804.

# Martin Dickerson v. Charles Morgan.

*Upon an appeal from a decree of the late Lexington District Court.*

1. Where one locates lands on warrants furnished by another under an agreement that they are to divide the land between them, the locator is not bound to make good the land against adverse claims.

2. If a party has been prevented by unforeseen circumstances from making his defense to an action at law, a court of equity will compel his adversary to submit to a new trial.

3. Where a new trial in an action at law would only involve the construction and effect of a written contract, which must be determined by the court, and not by a jury, and the contract is already before the court in the bill for the new trial, the court should not decree a new trial at law, but should construe the contract and do equity between the parties at once.

The first objection stated by the appellant to the decree of the court below is, that it is a general principle " that relief shall not be granted in equity where there is defense at law." This, as a general rule, is correct; but, like other general rules, has its exceptions. To lay down the particular cases which would form exceptions to this general rule, might be difficult. Every particular case must depend on the peculiar circumstances attending it; those attending this are deemed sufficient, and, therefore, the application to the court of chancery in this case was proper.

The merits of this cause depend upon the true construction and legal import of the instrument of writing given by Morgan to Bennett, in September, 1783. In the construction of this writing, the appellant's counsel relied strongly on the words, " certifying and securing five hundred acres of prime land ; " if these were the only words which ought to be considered, his construction might prevail. But the whole writing should be taken together; in it, almost immediately following the words relied on, will be found the words, "which said land I entered for him on the north side of Stoner's fork of Licking creek, etc.," from which words it is evident Morgan was only the locator of the said land; and the latter words being connected with the former, shows that he was to secure the land as locator only. And this construction is greatly

strengthened by the proofs in the cause, which clearly show that where similar words have been used in other contracts of the like nature, it was not in contemplation of the parties that the locator was bound to make good the land against interfering claims, and this opinion is consonant to the former decisions of the courts of this country on that point, and is in unison with the decision of the district court of the United States for the Kentucky district, in the case of *Hudson's Heir* against *Kennedy.* But it is objected that the complainant has not shown that he has done the duty of a locator, and without which a court of equity should not interfere. This is the true point in which this cause should be considered. The record contains very little as to this point; the attention of the parties hath been drawn off to the statement of a subsequent contract, which is not proved, and to other matters not important. The complainant in his bill states that he entered one of the warrants in his own name as assignee of the said Bennett, and the other in his own and Bennett's names, which will appear from the entries now of record in the surveyor's office. He also states that he had withdrawn the first entry and made a re-entry on the Kentucky river, opposite the mouth of Station Camp creek, which he believed to be a good chance. He further states that he informed Bennett that the chance of the other entry was a bad one, and that he made several proposals to him, one of which was that he should be entitled to one fourth of each tract. Bennett, in his answer, admits that the warrants were entered as stated in the bill; he also states that he applied to Morgan and made inquiry as to the land, and was referred to a surveyor and a chain-carrier; that Morgan gave him a writing which he understood in substance was that he, Bennett, might go and settle upon any part of the land, and if it should be lost or taken by prior claims, that he, Morgan, would let him have other 500 acres out of the 2,000 entered in his name, but would not pay for his improvements. But afterward, when he heard it read, it did not correspond with their bargain, and therefore he did not assent to it. This writing is stated to be lost or mislaid, but the contents of it are ascertained by the proofs with tolerable certainty, and from which, as well as from Bennett's own statement, Morgan authorized him to settle upon any part of the land on Licking, and should it be taken by other claims, that he should have 500 acres out of the land entered on the Kentucky, but Morgan was not to pay for improvements. Bennett, after making inquiry into

the land on Licking, and finding that it was greatly involved in disputes, and thinking as Morgan did, that the chance was a bad one, instead of applying for 500 acres of land entered on the Kentucky, transfers the original writing to Dickinson, who commenced suit in Bennett's name against Morgan, to recover damages for the value of 500 acres of prime land upon the waters of Licking. He obtains a judgment regularly, though expeditiously, and the construction before given of the writing is correct, unjustly against Morgan, when it was not in his power, from a number of unforeseen circumstances, to make his defense. The inferior court therefore decided properly in entertaining this suit and enjoining the judgment, but it erred in the relief afforded. The decree is, "that unless the defendants consent to a new trial at law, that the injunction be made perpetual;" the defendants having refused their consent, the injunction was made perpetual. This court conceives that if a new trial at law was deemed proper in this case, it should have been directed without the consent of the defendants; but it is doubted whether it was proper, as the *construction* and legal import of the writing was a matter of law and determinable by the court upon demurrer or special pleading, and not by a jury, whose province is to determine questions of fact; and as the whole matter was as fully before the court as it could have been made by special pleadings, the cause should not have been sent again to a court of law. It is also conceived that the other branch of the decree is erroneous, which makes the injunction perpetual, without saying any thing as to the seven or eight hundred dollars which had been recovered by execution from Morgan, or directing Morgan to convey a fourth part of the land. This obliges Bennett, or his assignee, to take seven or eight hundred dollars for the fourth part of the land saved by the entries, which may be less than it is worth, and by that means Morgan may be greatly benefitted and Bennett greatly loser, or the reverse may be the case. This court is of opinion that as the cause was properly sustained by the court of chancery, it should have determined the legal import and effect of the writing upon which the suit was brought, and then decreed that Morgan should convey to Bennett or his assignee, one fourth part of each tract of land, according to quantity and quality, and upon this being done, that the injunction should be made perpetual as to so much of the judgment at law as remained unsatisfied, and further, that Bennett, or his assignee, which ever had received the money, should refund to Morgan the

sum or sums of money which had been made by virtue of the executions issued on that judgment.

Therefore, it is considered by the court, that the decree aforesaid be reversed, and that the cause be remanded to the Fayette circuit, with directions to cause the land located by Morgan, on warrants received from Bennett, to be divided into four equal parts, according to quantity and quality, and direct Morgan to convey by deed, with special warranty, one fourth part of the said land, at the costs and charges of Morgan, to Bennett or his assignee, and to make such further decree as shall accord with the foregoing opinion of this court. And as Morgan neglected to make his defense at law, although it happened from unforeseen and uncontrolable circumstances, yet it is conceived that he should pay the costs in the court of chancery and in this court, which is decreed and ordered accordingly, and which is also ordered to be certified to the circuit court of Fayette county.